For an argument not to exceed 15 minutes per side, Mr. Hirsch will be defendant of. Good morning.  May it please the court, Kevin Hirsch on behalf of the appellant Aziz Naser. If possible, I'd like to reserve three minutes of my 15 for rebuttal. In November of 2013, the district court considered whether the one-half page, barely legible, and poorly drafted agreement of indemnity was clear on its face. Lexon attempted to convince Judge Drain, and will now attempt to convince this court, that the document was in fact clear and unambiguous. We contend that a simple perusal of that document would establish that, A, no lawyer could have possibly drafted or approved it, and certainly no layperson could be tasked with making sense of it. When Judge Drain reviewed that document for the first time in conjunction with the party's cross motions for summary judgment, he got it right. But Judge Drain found that the agreement was ambiguous on its face. Because of that, the fact finder, in this case also Judge Drain, was required to consider all of the parole evidence introduced by the party to determine the intent and to determine whether Lexon could overcome the settled principle of law that an agent for a disclosed principle will not be personally bound unless there is clear and explicit evidence of the agent's intention to substitute his personal liability for, or add it to, that of the company. Why two signatures? Why two signatures? Because that's the document that was prepared by VGM and that's what was provided to MOS and then to Mr. Nassar. I don't know why that's what was drafted by VGM. Would you agree the norm is when you have two signatures? I would say the case law establishes that merely having two signatures is not sufficient to establish that one of those two signatures was deemed to be in a personal capacity. So just I'll rephrase the question. I mean, there can be exceptions to norm, but if we can't even agree on the norm, I think we're going to have, maybe I need to know more case law here. But I thought the general rule was that if you sign two times, one is going to be in your capacity as the agent, the other is in your personal capacity. I mean, it makes sense, doesn't it? It makes sense, but I think there are substantial... And that's what Livonia says, right? There's Michigan case law that says that. I think there are substantial examples of where an individual would be asked to sign a contract in multiple places on that contract and would put his signature on that contract, not in a different capacity, but merely because the contracting parties are attempting to point out, you know, we want to make sure that the party signing has read this portion of the contract or this portion of the contract. Now, what's critical in this case... Why would you do this jointly and severally for the second... I mean, so the second signature line has a different predicate for it, right? Well, the second signature line, and really the only thing that was emphasized in this entire agreement, is the statement right above the bottom two signature blocks, in bold letters, must be signed by a corporate officer. So we're talking about a half-page agreement that is barely legible. And the agreement that's in the court record, by the way, is precisely the same agreement that was handed to Mr. Nassar. This isn't, you know, the same size font. That's what he read. It's virtually illegible. The only portion that is emphasized by VGM or Lexan in this case is the statement in all capital letters, and the font is probably two or three times as big as the normal font, must be signed by a corporate officer. The only purpose of requiring an indemnity agreement to be signed by a corporate officer is if the entity, not the individual, was going to be bound. It's impossible to reconcile the requirements of a corporate officer signature for an individual indemnity agreement. And it certainly doesn't lend itself to a finding that that document is clear and unambiguous on its face. When Mr. Nassar saw that... Basically, Mr. Nassar, by the way, had sold the company in 2007, December of 2007. He was handed this document in July of 2009 at a time when he was basically being phased out. He was still there, and technically he still had the title of CEO. But by 2010, he was completely out of the company. Huron Capital, the private equity firm, had bought the company. They hired their own individuals to run the company. Dennis Durko and Jason Villeneuve, who provided affidavits in this case, were the primary individuals running the company. When they received the VGM agreement of indemnity, and they got it from Tim Morgan, who was an independent contractor who was tasked with getting these surety bonds on behalf of Michigan Orthopedic Services, Tim Morgan got the document. He had already confirmed with VGM through a telephone call that they did not require personal indemnities because Mr. Durko, the president of the company, had told Mr. Morgan that he would not, in fact, have his corporate officer sign any kind of individual indemnity. So Mr. Morgan... So what's your theory of what his first signature meant? My theory is that... Is your theory it's redundancy and belt and suspenders, or what's your theory? Well, my theory is they're asking for the applicant in the first section, so the applicant was Michigan Orthopedic Services. And then they're asking, we understood, Mr. Nassar understood, that two entities were going to be bound by this agreement, MOS Holdings and MOS. Mr. Higgins ultimately signed on behalf of MOS Holdings. Mr. Nassar ultimately signed on behalf of MOS. Now, frankly, when Mr. Nassar was handed the agreement, again, his involvement was small. He was specifically asked to sign it. His name was typed on the agreement by VGM. This wasn't MOS's decision, who should sign this agreement, let's have Ozzie Nassar sign it. His name was on it. He was authorized to sign it because he still had the title, so he signed the agreement. When he was handed the agreement, he saw two places for his signature. Applicant, Michigan Orthopedic Services, Ozzie Nassar on the bottom. He believed he was signing as the authorized representative, and that would be reasonable to think, given that it was directly underneath, bold letters must be signed by a corporate officer. So we would contend that the court got it absolutely right, that the agreement is, in fact, ambiguous. Now, the court specifically said, and the court pointed to the language, that Lexon was only intending to bind MOS and its owner or owners, and pointed to the language, the undersigned owner or owners. And Judge Drain specifically said in his summary judgment opinion that it's imperative that the fact finder make a determination of whether Mr. Nassar was, in fact, an owner of MOS when he signed that document in July of 2009. That's what the trial. So what does it mean that Higgins is also an MOS officer and he signed? So what's the point of two officers signing when it's? No, Higgins is an officer of MOS Holdings. MOS Holdings was the 100 percent owner of the membership interests of MOS. So it was Mr. Nassar's understanding that there would be two entities that would be bound by that agreement, MOS and MOS Holdings. Now, Lexon's position is that there are three entities or individuals bound, MOS, MOS Holdings, and Mr. Nassar individually. Mr. Nassar not only didn't read it that way but was specifically told by Mr. Durko and Mr. Villeneuve, who were specifically told by Mr. Morgan, who was the only individual who dealt with VGM, that he was told that there was no individual indemnity being requested here. So Mr. Nassar had no reason to think otherwise. The evidence that was produced at trial is very clear that Mr. Nassar was. What's your best case? So am I getting your position straight that, hey, listen, Judge Drain was right, there's ambiguity, that means what, jury trial, that's the idea? Is that what you want? Well, it didn't end up being a jury trial. No, no, no, but is that what you want? Or a bench trial, that's what you want ultimately with evidence? No, I think it should be reversed based on the evidence that was introduced at this trial on the papers. We basically agreed to a trial on the papers. So this panel is looking at precisely the same evidentiary record that the district court, acting as fact finder, reviewed. This isn't a situation, and Lexon would like the panel to believe, that this is an issue where Judge Drain made credibility determinations that ought not to be overturned on appeal. That's not the case here. This was decided entirely on the written record, and it was a relatively small written record, summary judgment briefing with some additional exhibits that were stipulated to by the parties in advance of the trial on the papers. So what I would say is that there are very clear errors in how Judge Drain analyzed the evidence here. There was no evidence introduced that Ossie Nasser owned any portion. They have to be clear? I'm sorry? Do you concede they have to be clear for us to reverse them? I concede that fact finding has to be clear error, and I think you will find clear error in assessing the record here, because the only evidence introduced regarding ownership of MOS, we have four affidavits from all the individuals who had personal knowledge of this transaction. Why isn't it as simple as the general rule is when you have two signatures, the assumption is the second signature is in individual personal capacity, whatever you want to say. If that's the general rule, it would seem very difficult in a case where both sides are putting on additional extrinsic evidence to say that there's clear error given the general rule. First of all, I think there is case law, and we cited case law, not from this circuit, but we cited a Second Circuit case that said signing a document twice does not necessarily mean that one of the signatures must be in a personal capacity.  My question is if the norm is two signatures usually mean one in corporate capacity on behalf of the corporation and the other individual, if that's the norm, I know you can accept from that norm. That sounds like what the Second Circuit and probably other cases say, but I'm saying in a clear error setting, if the district court has findings consistent with the norm, isn't it pretty hard to show clear error? I know you can get a finding the other direction if the district court makes that finding, but we have to find clear error. I understand that, and I think if you take the fact that the judge found that it was ambiguous, and I think you will agree the judge was right, the agreement on his face was ambiguous, and then you look at the evidentiary record of parole evidence, there is simply no parole evidence that the intent of Mr. Nassar, which is, that's what it boils down to, it boils down to the intent of the parties once you get past the fact that the language is not clear and unambiguous. And all of the parole evidence introduced favors a finding that Nassar did not have that intent, and frankly, neither did VGM or Lexon. They didn't produce any evidence of anyone who was involved at the time that this agreement was prepared or executed by Mr. Nassar. All they produced was an affidavit from Michelle Newman of VGM, who I don't even believe was there at the time this was drafted, and basically if you look at Ms. Newman's affidavit, it says VGM intended for this to be a personal indemnity, and you can find this by looking at the plain language of the indemnity where we had two signature blocks. Well, Judge Drain already found that that wasn't sufficient, and that was ambiguous. Is there something in the record that says that Morgan, who you contend is the one contacting Lexon's agent, then relayed what he learned from this VGM person to Nassar? If you look at the affidavits of Morgan, Durko, and Villeneuve, Morgan will say that he relayed it to Durko and Villeneuve. Durko and Villeneuve presented it to Nassar, and they presented it to Nassar only asking him to sign it as a corporate representative of MOS. So it's a three-step process. It's VGM to Morgan, Morgan to Villeneuve and Durko, Villeneuve. Really what I'm asking, I'm trying to figure out the significance of the conversation that Morgan says he had with a VGM representative. Yes. Let's just assume that that did take place the way he said it did. Did he communicate that directly or indirectly to Nassar? He communicated it to, indirectly in the sense that he communicated it to Durko and Villeneuve, who communicated it to Nassar. So he did not communicate it directly to Nassar. There was a missing link in that. So when the two that had the communication with Nassar talked to him, did they say that they were basing their representations based on what Morgan had learned from VGM? Nassar wasn't aware of any of this until it was presented to him, and it was presented to him as, you need to sign this as an authorized representative of MOS. That's all Nassar knew about the entire process. I'm just trying to figure out what significance the Morgan-VGM conversation has, if it was not in any way communicated directly or indirectly to Nassar. Because we're trying to determine, number one, what VGM and Lexon's intent was, and the communication with Morgan establishes that it was not their intent to have a personal indemnity, or they wouldn't have told Morgan that they don't require that. And then we're looking at Nassar's intent, and that can be determined by what was told to Nassar at the time. And the only thing that was told to him, the only people he communicated with were Durko and Villeneuve, who told him, this is a corporate indemnity. You're signing on behalf of the entity. And Durko and Villeneuve were whom? Durko was the president and CFO of Michigan Orthopedic Services. He was brought on by Huron Capital, who purchased the company from Mr. Nassar in 07. And Villeneuve, I believe, was the controller. So they were pretty much the two most significant individuals at MOS at that time. So they're not authorized to speak on behalf of Lexon or VGM, right? They're not authorized to speak on behalf of Lexon or VGM. What I'm saying is the only thing that was communicated to anyone at MOS was this conversation with Mr. Morgan, who was also an MOS person, and VGM specifically said, we are not requiring an individual indemnity. That's the only conversation. So there's no parole evidence from Lexon as to what their intent was at the time. There are no other questions or comments. Okay. Thank you. Thank you. If it pleases the Court, Mark Reisberg on behalf of Appellee Lexon Insurance Company. First of all, I'd like to point out an observation during the appellant's argument, which is it sounded an awful lot like trial argument and not appellate argument. I mean, what we were talking about here is whether or not there was clear error, whether or not Judge Drain during trial and in his findings of fact and his final opinion in order, which was reduced to the judgment. I think he ultimately conceded what the norm is. If two people sign, that helps you. But then I understood his point to be that the judge also said this was ambiguous, which was why all this parole evidence was admitted, and that when you look at all that, it's really quite one-sided. And if it's quite one-sided, that gets you to clear error. So that's what I hear him to be saying, which I think is a fair appellate argument. Well, for a point of clarification, what he's referring to in terms of Judge Drain making a finding that the document or the contract is ambiguous wasn't in his findings of fact and conclusions of law that were reduced to the judgment. That was in a Rule 56 order denying cross motions for summary judgment. And of particular note in that order is the judge's statements that the fact that the parties took such opposite positions is what led the judge to believe that the parties or the contract was ambiguous. Now, I don't know of anything in the actual final judgment that made any reference to the contract being ambiguous, although the judge did. But, I mean, that is kind of a premise of denying cross motions for summary judgment, right? I mean, it seems like law of the case. If there was an ambiguity, why didn't you resolve this at the summary judgment stage? Well, I guess first of all, I'd like to point out that, you know, and I think Judge Drain did this in his final judgment, is that in his order denying the appellant's Rule 59 motion, the second motion, that at the time of summary judgment, the standard is quite different than it is at the time of trial. And when you have parties that are cross-moving for summary judgment and presumptions in favor of both parties based on facts and inferences, it's going to make it, I think, fairly difficult for a judge in a cross-motion situation. Well, for what it's worth, that makes no sense to me. I mean, if a judge thinks a contract is unambiguous, they're going to rule as a matter of law at the summary judgment stage. In fact, they might rule as a matter of law at the motion to dismiss stage because it's a legal question, right? That's all legal determination in terms of what it means. So he decided to have evidence that does imply there was some ambiguity. But maybe the better point is what's your response to his point that if you think evidence was relevant and parole evidence is only relevant if the contract's ambiguous, was it truly one-sided? That's his point, that it's all one-sided. Well, my response to that is it wasn't one-sided in the sense that there was only evidence supporting one position and no evidence supporting the other position. What's the evidence that supports your interpretation? Well, we've got the general agreement of indemnity. That's the contract. That's not parole evidence. What's the parole evidence that supports you? Let me back up and give it to you contemporaneously. You have a contact log of VGM, and all of this evidence is contemporaneous with the execution of the agreement of indemnity. You have the contact log, which references all the contacts between VGM and Michigan Orthopedic Services. You have the application for indemnity, which identifies Mr. Nassar as an owner, his home residence, his Social Security number, all those things. You have the actual application, or the form itself, which was executed in counterpart, resulting in two agreements of indemnity, one signed by Mr. Nassar, one signed by Mr. Higgins. And you have some other evidence and admissions that kind of circulate around those issues, namely the fact that there was never communication from Mr. Nassar directly to VGM saying, why did you prepare a form for me to sign in an individual capacity and require me to affix my Social Security number to it? I don't understand. And that's particularly relevant in the situation which, as you pointed out, there was two places for a signature. And if truly what Mr. Nassar was told by all these other people, not directly, but one person telling another person, eventually telling him, supposedly, then a reasonable person, I think, would ask the question, if that's the case, this doesn't make sense. Why are they asking for my Social Security number? That's clearly a personal identification issue, not an identifier of representative capacity. Let me ask the question. Perhaps it's the same question asked in a slightly different way. You're probably not going to like the first part, but you probably are going to like the second part. We'll just telegraph that in advance. If you look at the order that Judge Drain signed denying the Rule 59 motion, it seems pretty clear that he thought this agreement was ambiguous right up through the reconsideration. He says he considered all of the extrinsic evidence as required when interpreting an ambiguous agreement. So along the lines of Judge Sutton's question, why would he be doing that and saying that if the agreement wasn't ambiguous? Well, fair enough. So if we assume that it is ambiguous, then it's interesting. There was a statement earlier that this was a paper trial, so there is no credibility determination. And that may be true in the sense that there was not a witness testifying live for which you could assess their credibility. But there's a considerable discussion in here about how the court simply didn't find the extrinsic evidence submitted by Nassar to be credible and in a way that then would support their position. And so, therefore, he ruled for you. That's really what happened here, isn't it? True. He didn't believe the parole evidence that's being argued forcefully here this morning. Precisely right. The judge was presented with two sides of evidence. Now, why is he right about that? Why is he right about that? Well, the principal issue is going back to what the standard for consideration of finding mutual assent in a contract is. And Michigan controlling law says that it's an objective test, not a subjective test. And the objective test standard, as I'm sure the court is well aware, really goes to what the overt manifestations and acts of a party to a contract are. Whereas the subjective test or subjective intent theory relates to somebody's undisclosed secret intentions. In other words, I'm going to do this, but I really mean something else. But, I mean, that argues too much, doesn't it? Because that would suggest parole evidence is never relevant. Parole evidence is always subjective. Well, I guess I don't know that that's necessarily the case. I can't agree with that proposition. I think what it goes to is my next point, which is, in looking at the extrinsic evidence presented, on one hand, in Lexon's extrinsic evidence, you've got acts. You've got documents. Nassar's extrinsic evidence is predominantly, this is what I meant when I did this. Well, that's not really true. It seems to me, at least in part, it takes us back to this question of the Morgan affidavit, where he says he called your agent and your agent, and I haven't seen anything that suggests you're disavowing what the agent said, that you didn't require individual guarantees in this case. And then he follows that up by saying, and you never put anything in to rebut this alleged conversation between Morgan and your agent. So is that true or is that not true? That's not true. So what did you put in that would suggest that that conversation didn't happen or was not reliable in terms of Nassar? Predominantly two pieces of evidence, the first being the VGM contact logs, which literally identifies dates and a reference to who or what the subject matter of the conversation was about. There's no indication of any conversation with Mr. Morgan in that. So that first one is basically Morgan's lying. The conversation didn't occur. I'm not going to say that he's lying because I think that would affront his personal character, but what I will say is that it's not supported by documentary evidence that's created at the time the contract was created and executed. Okay, that's the first thing. What's the second thing? The second thing is an affidavit by a VGM employee that was employed at the time of all this transaction that testified and averred to the fact that that didn't happen, that nobody said that they wouldn't personally require a personal indemnification. Now, point three. How could that person say what Morgan was or was not told? Well, I think that person is saying VGM never had that conversation. Okay. Now, point three is that Morgan's affidavit, if I recall this correctly, refers to no one ever required a personal guarantee, not nobody ever required me to sign a personal indemnity. And as the law is clear, guarantee and indemnity are totally different things. Now, maybe there's an explanation for that, but that explanation was never put into evidence, and that's a critical point. We could argue about it, but argument unsupported by evidence isn't going to support a findings of fact. So in that last argument, you'd be willing for purposes of this appeal to concede for a moment that it did occur, but it related to a different legal relationship. Well, with the last point, I guess what I'm saying is that it doesn't matter if it occurred or not because what he's talking about is apples and oranges. So in terms of evidence, in terms of how Judge Drain was weighing the evidence. And what did they say in response to that indemnity guarantee? You're talking about Mr. Nassar? Right. I think he took the position that they're the same thing. Explain how they're different. Tell us why they're different. Well, the legal concepts of guarantor and indemnitor are predicated on the difference between primary liability in the situation of an indemnitor and secondary liability in terms of a guarantor. So they're legally distinct concepts. Obviously, they're different terminology as well. Wouldn't it have made much of a difference here? I think it would have.  Yeah, because I think the difference is... If it's an MOS's bankruptcy, it'd make a lot of difference, wouldn't it? Yeah, it absolutely would because... But they did go bankrupt. Well... I'm saying it wouldn't make a difference here. I think it would have either way, frankly, because what it would have required in terms of proofs at trial or at any other standard or at any other point in the case is for Lexon to first prove that MOS was liable and that MOS defaulted on its obligations such that Mr. Nassar's obligations were triggered, making him liable. Well, help me out. That seemed like that would have been really easy here. Probably would have been. Okay, so it makes no difference here is the point I'm making. Probably in the end result, it doesn't. Okay, so... But at least it goes to, arguably, the strength of the defendant's case. He's talking about a different sort of obligation here. Absolutely, and I think what it comes down to is Judge Drain was not only looking at what evidence is relevant, subjective or objective, and also how much credibility was going to give some of this evidence in terms of the arguments that were being made. In other words, does he believe it? Does he think it really matters? And clearly he found that, for the most part, Nassar's evidence was immaterial and lacked credibility. But I guess one thing I'd like to touch on is we've been talking about the merits of the case, but there's another, for lack of a better analogy, elephant in the room, being lack of jurisdiction for this appeal initially. Well, I don't know. So your whole thing is, what, he disposed of the motion when he struck it because it was overlong? The brief was too long? That's your argument? So that was the end of it? Well, I think the analysis really goes to what was the effect of his order? I mean, in one case, you could have him... I think when you strike something and say it's too long and you give someone seven days to refile, I don't think they've disposed of the motion until the seven-day period comes and goes. I mean, if they don't refile, fine. At that point, it becomes final. The clock starts reticking again. But, you know, I don't know. Well, I can understand there could be a lot of, you know, debate about this particular issue, especially given some of the case law that's out there. But I think that the critical point on that issue is, what is the effect of it? I mean, in one case, you have a Rule 59 motion which tolls the period to file the notice of appeal. Then you have an order striking that or disposing of that motion. So now the tolling period is expired. Does the clock start again? Because there's no other Rule 59 motion that's been filed. So what happens in that intervening period? And then you eventually get what Judge Drain allowed, which was a revised motion, a second motion. Does that start the tolling period from scratch? Does it revert the clock? You know, and there's been a lot of talk in the briefing, well, probably not as much as maybe there could be otherwise, about whether or not this particular case is controlled by the national ecological case. And they're extremely distinguishable. And the critical points there that I'd like to make are that in national ecological, you had a motion within the time to file a Rule 59 motion asking the court to extend the period of time for a Rule 59 motion. Now, the ultimate issue in there is that the appellee agreed to the extension. And the judge within the time to file a Rule 59 motion granted the extension. None of that happened here. I mean, the due process principles of notice and opportunity didn't exist here because Nassar didn't ask for an extension. So trying to apply the forfeiture argument from national ecological really runs afoul of, I think, some significant due process considerations in this case when there was no notice or opportunity to address that issue. And so to distinguish these two cases, one deals with... This is the issue of whether there should have been an extension of time? This is the issue of whether or not the court has jurisdiction to consider the judgment? I think is there a question pending at this point? Your time is up. Oh, I'm sorry. I'm sorry. Thank you, Your Honors. I would just like to address a few of the evidentiary points made by counsel. First of all, he referenced the call log that Michelle Newman in her affidavit referenced, indicating that there was no call by Mr. Morgan where Mr. Morgan was told by VGM that they didn't require personal indemnity. The call log, if you look at it carefully, is a log that was created once this file was open, once MOS started the application process to obtain the surety bonds from VGM. The call was made during the investigative process when Mr. Morgan, after being tasked by DERCO to find a company that would provide surety bonds, particularly without requiring individual indemnity. That call was made during the investigative stage, and that's pointed out fully in Mr. Morgan's affidavit. But even if that's true, you seem to say because somebody had a conversation sometime before the application was even submitted, therefore they're bound by it for all times. Again, that just doesn't make a lot of sense from a credibility standpoint. So unless you can show us that Judge Drain didn't consider all of these things, explain again why we should overturn these findings. Well, I can say that there are serious issues about whether Judge Drain actually did consider it because there were clear errors in Judge Drain's opinion, and I think Judge Drain was led astray by Lexon. If you look at Judge Drain's opinion, it is a 100 percent cut and paste from Lexon's findings of fact. Now, the problem sort of arose... He put all of this back in front of him in Rule 59, and he responded with an order rejecting everything. I mean, don't we have to trust him on that? I understand that, but I think you have to trust the evidence, and I think the evidence is clear. And if you look at it, there are simply some findings, both legally and factually, that are just dead wrong. In fact, Judge Drain relied on the fact that an LLC can't have corporate officers. So Mr. Nassar couldn't have been signing as a corporate officer because an LLC can't have corporate officers. This was just a completely false legal finding, and it was based on something that was in Lexon's... I haven't heard your answer to the Social Security number. My answer to the Social Security number is individuals are often asked for their Social Security number, and they don't... Sometime you'll think twice about it, but if you're asked by a credible source for your Social Security number, you're going to put it down. There was a line on the Agreement of Indemnity asking Mr. Nassar... No, it's not that he... It's not asking for a corporate title or signature on behalf of somebody else. I mean, Social Security number is... This is you. As a lawyer... You wouldn't do that for someone signing on behalf of someone else, right? A lawyer may consider... A lawyer may look at it and say, hey, I'm not going to give my Social Security number here. We're talking about a layman who was handed this document, and the only thing he was told was that you were signing on behalf of Michigan Orthopedic Services. This happens all the time. That's why people get lawyers. I mean, that is what happens all the time. I understand that, but again, I think... And this isn't exactly the typical back-of-the-form adhesion contract. I mean, yes, he is a layman, but he's also a doctor running a business too, correct? He is a doctor who was running the business up until 2007 and was involved... You know, remained involved until 2010 to keep the title in order to basically keep the employees happy for the new owners, Huron Capital. If there are no further questions, your time is up. Thank you. We appreciate the arguments that both of you have given, and we'll consider the matter carefully. Thank you.